NOT DESIGNATED FOR PUBLICATION

No. 116,596

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of L.H.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Saline District Court; PATRICK H. THOMPSON, judge. Opinion filed April 21, 2017.
Affirmed.

*Leslie Ann Johnson*, of Leslie Ann Johnson Law Office, LLC, of Salina, for appellant natural
mother.

*Nathan L. Dickey*, assistant county attorney, for appellee.

Before BUSER, P.J., MCANANY and STANDRIDGE, JJ.

*Per Curiam*:  Mother appeals from the district court's decision to terminate her
parental rights. Mother contends there was insufficient evidence to support the district
court's finding that she was unfit and that her condition of unfitness was unlikely to
change in the foreseeable future. Based on a thorough review of the record, we find the
district court's termination decision is supported by clear and convincing evidence.
Accordingly, we affirm.

FACTS

On April 6, 2015, the Kansas Department for Children and Families (DCF)
received a report of possible child neglect and abuse related to L.H. Specifically, the
report alleged L.H.—who was a toddler at the time—had been discovered wandering

1

alone on a busy street in Salina at 11:15 p.m. and was almost hit by a car. The same report alleged domestic violence and drug use in the home, as well as an ongoing pattern of neglect and abuse of L.H.

On May 30, 2015, DCF received another report that L.H. may have been the victim of child abuse at the hands of Father. Specifically, the report indicated that Father, who was angry at L.H. for opening the refrigerator to get some food when she was hungry, threw an object at L.H causing a 1-inch cut to the toddler's head.

On June 4, 2015, a Salina police officer completed a welfare check at Mother and Father's residence. L.H. was not in the home during the visit. On June 5, 2015, a DCF social worker met with Mother and Father at their residence. L.H. was not in the home during this visit either. Father said that L.H. was with a relative, but the parents failed to provide an address for the relative or identify any other location where L.H. could be located. During the interview, the social worker noticed Mother had a swollen and bruised eye. When the social worker asked about the injury, Mother began to cry but said she did not know what had happened. The social worker noted that prior reports to DCF alleged physical violence and methamphetamine use in the home.

On June 11, 2015, the State filed a petition to declare L.H. a child in need of care (CINC) based on an affidavit provided by a DCF social worker detailing reports of alleged physical and emotional abuse of L.H., lack of supervision of L.H., and drug use in L.H.'s home. At a hearing held on June 15, 2015, the district court granted temporary custody of L.H. to DCF pending adjudication. Mother and Father began to work on a case plan developed by St. Francis Community Services, one of several private organizations with whom DCF contracts to provide reintegration, foster care, and adoption services. The case plan developed by St. Francis initially targeted reintegration with Mother and Father as the permanency goal. Through the plan, Mother was authorized to receive several services including individual and couples counseling, mental health services, drug

2

assessment and treatment, and financial counseling. The plan also provided, however, that Mother was required to provide three consecutive negative urinalysis (UA) tests prior to any visit with L.H.

Notwithstanding the services authorized, Mother made very little progress on her case plan; she failed to appear for many scheduled UA tests and as a result was not able to visit L.H. very often. Mother continued to deny that drug use was an issue and failed to schedule or attend mental health appointments.

At the adjudication hearing on September 23, 2015, Mother did not contest the allegations in the CINC petition, and the district court adjudicated L.H. to be a child in need of care as defined by K.S.A. 2015 Supp. 38-2202(d)(1) and (d)(2). From September to the end of the year, Mother continued to make no progress on her case plan. On January 21, 2016, the district court found that reintegration was no longer a viable option. As a result, St. Francis modified the permanency goal in the case plan from reintegration to adoption.

On February 4, 2016, the State filed a motion to terminate parental rights as to Mother and Father. The district court held the termination hearing on July 20, 2016. Mother and Father stipulated to the facts in the petition to terminate parental rights, as well as the facts in a report and timeline prepared by St. Francis. In opposing termination of her parental rights, however, Mother argued she had made progress on the case plan developed by St. Francis. Mother noted that she completed her RADAC assessment but did not have the money to have it released to St. Francis; she and Father had seen a mental health therapist together; she attended individual therapy and began working with a recovery coach; she had obtained a driver's license so that she could secure a job; and she and Father had secured a four-bedroom house to live in, but St. Francis had not walked through yet.

3

The district court reviewed the allegations in the CINC petition and in the St. Francis report detailing the case management plan and the parents' lack of progress. The court found that St. Francis made reasonable efforts to rehabilitate the family through case management, mental health and medical services, alcohol and drug treatment, individual and couples' therapy, and medication management. The court said it was concerned about Mother's lack of employment, and the residence history was not suitable for a child—the home Mother and Father lived in until May 2016 was roach and bed bug infested, and Mother and Father were homeless for some time. The court also noted that the residence they were in at the time of the hearing had not been inspected by St. Francis or DCF.

Altogether, from June 2015 to July 2016, Mother had 112 opportunities to take UA tests as directed by the court; Mother tested positive for methamphetamine 4 times, positive for other drugs (either prescription or nonprescription) 35 times, failed to submit to testing 60 times, and tested negative only 16 times. During the same time period, Mother was given 58 opportunities to visit L.H. in DCF custody; Mother only attended 11 visits. While the court acknowledged that Mother had made some efforts at counseling and completed the RADAC assessment, it found that Mother failed to carry out the case plan regarding obtaining suitable housing and employment, completing negative UA tests, following through with a BIP assessment, and consistently attending mental health services.

The district court found clear and convincing evidence that Mother was unfit, the condition was unlikely to change in the foreseeable future, and termination of parental rights was in the best interests of L.H. The court thus terminated Mother's parental rights on July 20, 2016.

4

ANALYSIS

On appeal, Mother claims there is insufficient evidence to support the district court's decision to terminate her parental rights. Mother argues that L.H. was physically injured by Father, not Mother, and that Mother was also a victim of Father's abuse. Mother also claims there is insufficient evidence that the conduct or condition which rendered her unfit is unlikely to change in the foreseeable future, arguing: (1) the State's motion to terminate her parental rights was filed only 8 months after L.H. was removed from the home, which was not enough time for her to complete her case plan; and (2) Mother demonstrated some progress on her case plan.

In reviewing a district court's decision terminating parental rights, an appellate court must consider "whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that [the parent's rights should be terminated.]" *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). Clear and convincing evidence is "an intermediate standard of proof between a preponderance of the evidence and beyond a reasonable doubt." 286 Kan. at 691. Appellate courts do not reweigh the evidence, judge the credibility of witnesses, or redetermine questions of fact. 286 Kan. at 705.

Before terminating parental rights, the district court must find that the moving party has proven three elements by clear and convincing evidence: (1) the parent is unfit, (2) the conduct or condition which renders the parent unfit is unlikely to change in the foreseeable future, and (3) termination of parental rights is in the best interests of the child. K.S.A. 2015 Supp. 38-2269(a), (g)(1). When deciding whether a parent is unfit, the district court must consider a nonexclusive list of factors in K.S.A. 2015 Supp. 38-2269(b) and (c). Any one of these factors standing alone may, but does not necessarily,

5

provide grounds for termination. K.S.A. 2015 Supp. 38-2269(f). The district court relied upon the following statutory factors:

- K.S.A. 2015 Supp. 38-2269(b)(3) (the use of narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental, or emotional needs of the child).
- K.S.A. 2015 Supp. 38-2269(b)(4) (physical, mental, or emotional abuse or neglect or sexual abuse of a child).
- K.S.A. 2015 Supp. 38-2269(b)(7) (failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family).
- K.S.A. 2015 Supp. 38-2269(b)(8) (lack of effort on the part of the parent to adjust the parent's circumstances, conduct, or conditions to meet the needs of the child).
- K.S.A. 2015 Supp. 38-2269(c)(3) (failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home).

In support of insufficient evidence of unfitness, Mother first argues that it was Father that injured L.H. and that Mother was also a victim of Father's abuse. But the district court's finding that Mother was unfit was not based solely on Father's physical abuse of L.H. The court also found Mother unfit based on her use of narcotic and dangerous drugs of such duration and nature to render her unable to care for L.H.'s ongoing physical, mental, and emotional needs; Mother's mental and emotional neglect of L.H.; Mother's lack of effort to adjust her circumstances, conduct, and conditions to meet L.H.'s needs; and Mother's failure to carry out a reasonable plan in a timely manner to work toward reintegration.

Based on the evidence in the record, Mother simply demonstrated a complete lack of commitment to working with St. Francis and the reintegration process during the 13 months between the time L.H. was removed from the home and the termination hearing. Over the course of the year, Mother was offered 58 visits with L.H. but only attended 11

6

times. Mother continued to miss or fail the UA tests ordered by the court, demonstrating that she was unwilling to put aside her drug usage for her child's benefit. Although Mother attended some therapy appointments, she was unwilling to complete her case plan tasks in a timely manner. Here, clear and convincing evidence supports the district court's finding that Mother was an unfit parent.

Mother also claims the evidence in the record does not support the district court's finding that the condition rendering her unfit was unlikely to change in the foreseeable future. Mother asserts that she was making progress and that 8 months was not enough time for her to complete the case plan. A court may predict a parent's future unfitness based on his or her past history. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). The term "foreseeable future" is measured from the child's perspective and takes into account a child's perception of time. *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009).

Mother asserts she participated in individual therapy, obtained a driver's license so she could work towards obtaining employment, completed a drug and alcohol assessment, and began to have negative UA tests. While there is some evidence suggesting Mother made efforts toward her case plan, clear and convincing evidence supports the district court's finding that Mother's conduct or condition rendering her unfit was unlikely to change in the foreseeable future. While Mother attended individual therapy in February and March 2016, she only went to four appointments between April and the July 20, 2016, termination hearing. She went to only one couples counseling appointment with Father. And again, over the course of 13 months, despite 58 opportunities to visit L.H., Mother only visited her child 11 times, due largely to her own conduct: failing UA tests. Of the 112 tests mandated by the court, Mother tested negative only 16 times, while she tested positive for substances including methamphetamines 39 times and failed to submit to testing 60 times. Mother repeatedly demonstrated that she

lacked the motivation or commitment to make efforts toward her case plan to reintegrate L.H. into her care.

As the State notes, L.H. was 3 years old at the time she was removed from her parents' home and was 4 years old at the time Mother's parental rights were terminated. From L.H.'s perspective, Mother's inability to follow through with her case plan for over a year represented one-quarter of her life. See *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008) ("The 'foreseeable future' should be viewed from the child's perspective, not the parents', as time perception of a child differs from that of an adult."). Based on the facts presented here, the district court's finding that the conduct or condition rendering Mother unfit was unlikely to change in the foreseeable future is supported by clear and convincing evidence.

Affirmed.